**UNITED STATES DISTRICTCOURT**
**EASTERN DISTRICT OF PENNSYLVANIA (Philadelphia)**

| | | |
|---|---|---|
| DEBRA CONGO | : | |
| | : | |
| Plaintiff, | : | NO. 2:20-cv-02322-JD |
| | : | |
| v. | : | |
| | : | |
| AMERICAN AIRLINES GROUP INC., | : | **JURY TRIAL DEMANDED** |
| et al. | : | |
| Defendants. | : | |

## <u>ORDER</u>

AND NOW this _____ day of _____, 2020, upon consideration of

Defendants' Partial Motion to Dismiss, and Plaintiff's Response in Opposition thereto, it is

hereby ORDERED and DECREED that Defendants' Partial Motion is DENIED.

**AND IT IS SO ORDERED**.

_____
Judge Jan E. Dubois

## UNITED STATES DISTRICTCOURT
## EASTERN DISTRICT OF PENNSYLVANIA (Philadelphia)

DEBRA CONGO                           :
                                      :
                        Plaintiff,    :        NO. 2:20-cv-02322-JD
                                      :
            v.                        :
                                      :
AMERICAN AIRLINES GROUP INC.,         :        **JURY TRIAL DEMANDED**
et al.                                :
                        Defendants.   :

## PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS

Plaintiff, by and through her undersigned counsel, hereby incorporates her Memorandum of Law in Support of her Response in Opposition to Defendants' Partial Motion to Dismiss Plaintiff's First Amended Complaint as if set forth at length herein.

**WHEREFORE,** Plaintiff, by and through her undersigned counsel, respectfully requests this Honorable Court deny the Defendants' Partial Motion to Dismiss Plaintiff's First Amended Complaint.

                                      **WEISBERG LAW**
                                      /s/ Matthew B. Weisberg
                                      Matthew B. Weisberg, Esq.
                                      PA Attorney ID No. 85570
                                      David A. Berlin, Esq.
                                      PA Attorney ID No. 314400
                                      7 South Morton Ave
                                      Morton, PA 19070
                                      610-690-0801
                                      Fax: 610-690-0880
                                      Attorney for Plaintiff

                                      **MILDENBERG LAW FIRM**
                                      /s/ Brian R. Mildenberg, Esq.
                                      Brian R. Mildenberg, Esq.
                                      PA Attorney ID No. 84861
                                      1735 Market St.,
                                      Suite 3750

Philadelphia, PA 19103
215-545-4870
Fax: 215-545-4871
brian@mildenberglaw.com
www.MildenbergLaw.com
Attorney for Plaintiff

## UNITED STATES DISTRICTCOURT
## EASTERN DISTRICT OF PENNSYLVANIA (Philadelphia)

| | | |
|---|---|---|
| DEBRA CONGO | : | |
| | : | |
| Plaintiff, | : | NO. 2:20-cv-02322-JD |
| | : | |
| v. | : | |
| | : | |
| AMERICAN AIRLINES GROUP INC., | : | **JURY TRIAL DEMANDED** |
| et al. | : | |
| Defendants. | : | |

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANTS' PARTIAL MOTION TO DISMISS

**I.    Operative Facts**

Defendant, American Airlines, in a number of unlawful, intimidating and discriminatory acts, has created a discriminatory, hostile and bigoted environment toward its African American employees. (First Amended Complaint (FAC) paragraph 10)

On October 9, 2000, Plaintiff started working as a utility worker, cleaning airplanes, for US Airways. Upon information and belief, at her time of hire, Plaintiff was the only African American full-time stock clerk hired by American Airlines at the Philadelphia International Airport location. (FAC 11)

On or around March 2005, Plaintiff was laid off by US Airways when it outsourced its utility positions. Plaintiff lost her pension when her position was outsourced as she was just short of the five-year accrual mark. (FAC 12)

Under the International Association of Machinists and Aerospace Workers' Union (IAM) contract, of which Plaintiff is a member, Plaintiff had lifetime call back rights to bid for any open position with Defendant based on seniority. (FAC 13)

In or around December 2010, Plaintiff successfully bid for an open stock clerk position with US Airways. Plaintiff was let go from this position by US Airways prior to the completion of her 90-day probationary period in or around March 2011.Plaintiff was given the option to bid for another position after 6 months. (FAC 14)

In or around 2014, Plaintiff was once again hired as a stock clerk by Defendant.  On the 89th day of her 2014 employment period, Mr. Naggy, Plaintiff's attending supervisor the time, let Plaintiff go one day shy of the 90-day probationary period. (FAC 15)

In or around 2017, Plaintiff was once again employed by Defendant as a stock clerk, and again was let go prior to her completion of the 90-day probationary period. (FAC 16)

In or around July 2017, Plaintiff had witnessed and heard managers, Mr. Morgan and Mr. Buchanan make racist and discriminatory comments, including but not limited to **"niggers are dummies"**. (FAC 17)

In or around July 2017, Plaintiff, along with other employees of Defendant, overheard Mr. Buchanan and Mr. Morgan talking. Mr. Buchannan stated that he did **"not want this black monkey moving past her 90 days"** in reference to Plaintiff. Mr. Morgan concurred with Mr. Buchanan. (FAC 18)

Upon information and belief, it is the usual and customary practice of Defendant to move stock clerk trainees, within their 90-day probationary period, to a different stock clerk position every two weeks so that they learn all of the stock clerk duties. A more experienced stock clerk is assigned to the same position to work with the trainee and teach them position. (FAC 19)

Upon information and belief, Mr. Buchanan set Plaintiff up to fail in order to terminate her prior to her 90-day probationary period:

    a.  Mr. Buchanan refused to move Plaintiff from the shipping department after her two-week assignment there in order to prevent her from learning the other stock clerk positions;

    b.  while assigned to the shipping department, Plaintiff was never trained for international or HASMAT shipping, which made it extremely difficult for Plaintiff to perform those duties without assistance;

    c.  Mr. Buchanan moved the more experience stock clerk assigned to shipping during Plaintiff's tenure there so that Plaintiff was by herself without a more experienced stock clerk to assist and train her in the position; and

    d.  Upon information and belief, other stock clerks ignored Plaintiff's requests for assistance at Mr. Buchanan's direction. (FAC 20)

Plaintiff was written up and suspended for two days without pay for failure to provide a medical form, which she was told by Human Resources was not required. (FAC 21)

On or around September 9, 2017, Plaintiff was again let go by Defendants prior to the end of her probationary period. (FAC 22)

Upon information and belief, Plaintiff was terminated because Mr. Morgan falsely claimed that Plaintiff had lost a $100,000 part that was supposed to be shipped. (FAC 23)

Upon information and belief, Mr. Morgan claimed that the part was never found. (FAC 24)

Upon information and belief, the part was actually found and Mr. Morgan shipped it himself. (FAC 25)

Upon information and belief, Plaintiff was replaced by Wayne Lee (Mr. Lee), a younger Caucasian male and a cousin of Mr. Buchanan. (FAC 26)

Each of the three times Plaintiff returned to work for Defendant, she had to quit the job she was working at the time. (FAC 27)

Each of the three times Plaintiff returned to work for Defendant, her salary was decreased by Defendant. (FAC 28)

After Plaintiff was let go in 2017, she placed a bid for a utility and stock clerk position in the Charlotte, North Carolina office of Defendant but did not receive the position due to seniority. (FAC 29)

Upon information and belief, Plaintiff has not been hired for any open positions with Defendant American Airlines due to Mr. Buchanan's influence.  Plaintiff has constantly bid on open positions with Defendant since she was let go in September 2017 but has not been hired for any of them to date. (FAC 30)

Upon information and belief, the actual reason Plaintiff was not hired for the open positions is due to Defendants' pattern and intent to discriminate against, discipline, discourage and terminate Plaintiff due to her age and race. (FAC 31)

## II.    Standard

A.  Motion to Dismiss:  *Fowler* re *Twombly* and *Iqbal*[1]

**Reversing** the District Court's 12(b)(6) dismissal upon claims of insufficient specificity, the Third Circuit held the United State Supreme Court in Twombly and Iqbal (in accord with Phillips) merely requires that the Complaint "set out 'sufficient factual matter' to show that the claim is sufficiently plausible… [allowing] the reasonable inference that the defendant is liable for the misconduct alleged." Fowler v. UPML Shadyside - - F. 3d - -, 2009 WL 2501662 (C.A.3 (Pa)

---

[1] *See generally*, "Simplified Pleading, Meaningful Days in Court, and Trials On The Merits:  Reflections On The Deformation of Federal Procedure," *New York University Law Review*, Vol. 88, p. 286 (April 2013).

2009) (quoting <u>Ashcroft v. Iqbal</u>, 129 S.Ct. 1955 (2009)); <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544 (2007); <u>Phillips v. County of Allegheny</u>, 515 F.3d 224, 230 (C.A.3 2008).

<u>Fowler</u> reiterated the appropriate Motion to Dismiss standard, as elucidated in <u>Phillips</u>, remaining: "courts [must] accept all factual allegations as true, construe the Complaint in the light most favorable to the plaintiff, and determine whether, <u>under **any** reasonable reading of the Complaint</u>, the plaintiff *may* be entitled to relief." <u>Fowler</u>, supra (quoting <u>Phillips</u>, at 233) (emphasis added). "Although Fowler's Complaint is not as rich with detail as some might prefer, it need only set forth sufficient facts to support plausible claims."[2] <u>Fowler</u> (citing <u>Twombly</u>, at 564, n.8).

"Even post-<u>Twombly</u>, it has been noted that a plaintiff is **not required** to establish the elements of a *prima facie* case but instead, need only put forth allegations that 'raise a reasonable expectation *that discovery will reveal evidence of the necessary element*.'" <u>Fowler</u>, supra; (quoting <u>Graff v. Subbiah Cardiology Associates, Ltd.</u>, 2008 WL 231 2671 (W.D. Pa. 2008) <u>Phillips</u>, at 234. Thus, courts should not dismiss a complaint for failure to state a claim if it "contain[s] either direct or inferential allegations respecting all the material elements necessary to sustain recovery under some viable legal theory." <u>Montville Twp. v. Woodmont Builders LLC</u>, No. 05-4888, 2007 WL 2261567, at *2 (3d Cir. 2007) (quoting

---

[2] Mr. Sharp:       It's a conclusory fact.

Justice Breyer:   Well, it's a fact.  They sat in their view --

Mr. Sharp:       It's a conclusion.

Justice Breyer:   All right.  I don't know what a conclusory fact is as opposed
                 to a regular fact.

<u>Dart Cherokee Basin Operating Co. v. Owens</u>, 13-719 (S.Ct. October 7, 2014) (excerpt from transcript of oral argument).

<u>Twombly</u>, at 1969).  In fact, a Plaintiff need not plead any causes of action (merely facts with request for relief).  *See* 2 James Wm. Moore et al., *Moore's Federal Practice* P 8.04[3].

"Under the Federal Rules of Civil Procedure, an evidentiary standard is not a proper measure of whether a complaint fails to state a claim." <u>Fowler</u>, supra  "…[S]tandards of pleadings are not the same as standards of proof." <u>Id</u>.  "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts alleged is improbable and that a recovery is very remote and unlikely." <u>Id.</u> (quoting <u>Twombly</u>, at 556).

B.  <u>Amended Pleading</u>

A Plaintiff should be provided an opportunity to file an Amended Complaint if it appears that the deficiencies can be corrected.  <u>Twombly</u>, supra.; *See*, 2A J. Moore, *Moore's Federal Practice* ¶12.07 [2.-5], P.12-99 (2d ed. 1994); *accord*, <u>In re Spree.com Corp.</u>, 2001 WL 1518242 (Bankr. E.D. Pa. 2001).  Under this liberal pleading standard, courts should generally grant plaintiffs leave to amend their claims before dismissing a complaint that is merely deficient. See <u>Grayson v. Mayview State Hosp.</u>, 293 F.3d 103, 108 (3d Cir. 2002); <u>Shane v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir. 2000).

The Court should freely give leave to amend a Complaint "when justice so requires." FRCP 15(a)(2); <u>Fowler</u>, supra. ("we note that the District Court <u>inexplicably</u> foreclosed Fowler from an opportunity to amend her Complaint so as to provide further specifics…" Though the deadline for amended pleadings had not yet expired, the District Court dismissed Fowler's Complaint with prejudice **in error**) (emphasis added).  The Court should grant Plaintiffs leave to amend their Complaint unless futile or prejudicial, ***even if not requested***. <u>Adams v Gould, Inc.</u>, 739 F.2d 858, 868-870 (C.A.3 1984) (reversing district court denial of motion to amend a complaint to assert a new legal theory); <u>Arthur V. Maersk, Inc.</u>, 434 F.3d 196, 204-2017 (C.A.3

2006) (reversing district court denial of motion to amend to add a new party approximately one year after initiation); Lorenz v. CSX Corp., 1 F.3d 1406, 1414 (C.A.3 1993) (finding no prejudice three years after action and two years after complaint was amended for second time); Estate of Frank P. Lagano v. Bergen County Prosecutor's Office, No. 13-3232 (C.A.3. 2014) (citing Alston v. Parker, 363 F.3d 229, 235 (C.A.3 2004)) (reversing a district court for not *sua sponte* granting leave to amend).

"Prejudice" is often used as a misnomer – *prejudice* is not defined by the requirement of ongoing litigation or defense but instead results from an inability to defend. Lorenz, *supra*. "Futility" invokes the 12(b)(6) standard upon the district court's notice of the complaint's deficiencies.  Davis v. Abington Memorial Hospital, 765 F.3d 236, 244-245 (C.A.3 2014) (citing Krantz v. Prudential Investments Fund Management, LLC, 144 F.3d 140, 144 (C.A.3 2002).

C.  Jurisdiction

Supplemental jurisdiction "**must**" be declined in lieu of adjudicating pendent State law claims unless consideration is provided in affirmative justification otherwise.  Borough of West Mifflin v. Lancaster, 45 F.3d 780 (C.A.3 1995) (emphasis added); *see,* Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7 (1988) ("in the usual case in which all federal-law claims are eliminated before trial, the balance of factors to be considered under the pendent jurisdiction doctrine—judicial economy, convenience, fairness, and comity—will point toward declining to exercise jurisdiction over the remaining state-law claims"); *see also,* Annulli v. Panikkar, 200 F.3d 189, 202 (3d Cir. 1999).

In adjudicating a peculiar State law question, that analysis should be left to the State Court.  Burford v. Sun Oil Co., 319 U.S. 315 (1943); Louisiana Power & Light Co. v. City of Thibodaux, 360 U.S. 25 (1959).

D.      Scope of Review

Only a document integral to or explicitly relied upon in the complaint may be considered without converting a motion to dismiss into one for summary judgment.  In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1426 (C.A.3 1997).  "[W]hat is critical is whether the claims in the complaint are 'based' on an extrinsic document and not merely whether the extrinsic document was explicitly cited."  Schmidt v. Skolas, No. 13-3750 (C.A.3. October 17, 2014) (quoting Watterson v. Page, 987 F.2d 1, 3-4 (C.A.1 1993)).

Conclusion:  Standard

When applying the correct standard, Plaintiff's Complaint is sufficiently specific and Defendants' Motion should be denied.  In the alternative, Plaintiff should be granted leave to amend as this Honorable Court is, respectfully, directed to allow.

III.    **Argument**

A.      **Plaintiff has specifically alleged Defendant Morgan's personal involvement in subjecting Plaintiff to a severe and pervasive hostile work environment because she is African American, including Defendant Morgan causing Plaintiff to be terminated**

To state a hostile-work-environment claim, Plaintiff must satisfy five elements: (1) she endured "intentional discrimination" because of her race; (2) "the discrimination was severe or pervasive"; (3) "the discrimination detrimentally affected [her]"; (4) "the discrimination would detrimentally affect a reasonable person in like circumstances"; and (5) "the existence of *respondeat superior* liability." Castleberry v. STI Grp., 863 F.3d 259, 262 (3d Cir. 2017). This last element turns "on the status of the harasser." Vance v. Ball State Univ., 570 U.S. 421, 424 (2013). "If the harassing employee is the victim's supervisor and the harassment "culminates in a tangible employment action," the employer is strictly liable. Id.

To state a racial discrimination claim under § 1981, Plaintiff must allege that

(1) she "belongs to a racial minority," (2) Defendants intended to discriminate against her because of her race, and (3) the discrimination concerned "one or more of the activities enumerated in § 1981." Castleberry, 863 F.3d at 266 (quoting Estate of Olivia ex rel. McHugh v. New Jersey, 604 F.3d 788, 797 (3d Cir. 2010)).

Here, Plaintiff's allegations against Defendant Morgan include[3]:

- In or around July 2017, Plaintiff had witnessed and heard managers, Mr. Morgan and Mr. Buchanan make racist and discriminatory comments, including but not limited to **"niggers are dummies"**. (FAC 17)

- In or around July 2017, Plaintiff, along with other employees of Defendant, overheard Mr. Buchanan and Mr. Morgan talking. Mr. Buchannan stated that he did **"not want this black monkey moving past her 90 days"** in reference to Plaintiff. Mr. Morgan concurred with Mr. Buchanan. (FAC 18)

- Plaintiff was written up and suspended for two days without pay for failure to provide a medical form, which she was told by Human Resources was not required. (FAC 21)

- On or around September 9, 2017, Plaintiff was again let go by Defendants prior to the end of her probationary period. (FAC 22)

- Upon information and belief, Plaintiff was terminated because Mr. Morgan falsely claimed that Plaintiff had lost a $100,000 part that was supposed to be shipped. (FAC 23)

- Upon information and belief, Mr. Morgan claimed that the part was never found. (FAC 24)

- Upon information and belief, the part was actually found and Mr. Morgan shipped it himself. (FAC 25)

---

[3]     While Complaint citations are used out of an abundance of caution and emphasis, the Complaint is to be read as a whole: Defendant's hyper-parsing is expressly eschewed. Ashcroft v. Iqbal, 129 S.Ct. 1955 (2009)); Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007).

Objectively, there was a pattern of antagonism against Plaintiff by Defendant Morgan, which created a hostile work environment that was severe and pervasive – and which caused Plaintiff's termination.

Defendant Morgan now argues he is immune from liability because he is not Plaintiff's direct supervisor and because he did not make the decision to terminate Plaintiff. Defendant Morgan ignores that his knowingly false statement about Plaintiff was the direct cause of Plaintiff's termination.

This sequence of events is otherwise known as acting as a "cats paw" or a rubber stamp. Burlington v. News Corp., 55 F.Supp.3d 723 (E.D.P.A. 2014). When a bad actor is motivated by discriminatory animus and is the proximate cause of the ultimate employment actions, upper level management's "rubber stamp" does not remove liability. Id.

Plaintiff further alleges that Defendant Morgan has a supervisory level position and Mr. Morgan was personally involved in racist behavior about Plaintiff and in Plaintiff's presence; Mr. Morgan is not a coworker – he is a supervisor. Defendant Morgan does not contest that he is a supervisor. It is axiomatic that no supervisor would condone racist behavior if they were aware of such behavior, which has no place in any workplace.

    a.  *Plaintiff suffered adverse employment actions*

Plaintiff suffered a tangible adverse employment action: her termination, which is protected in § 1981 - namely, making and enjoying the benefits of her employment contract.

In addition, "Equal protection discrimination claims under §1983 are evaluated under the same framework as Title VII claims." Middleton v. Deblasis, 844 F.Supp.2d 556 (E.D.Pa.2011).

In the employment discrimination context, "An action is an adverse employment action if a reasonable employee would have found the action materially adverse, which means it might

have dissuaded a reasonable worker from making or supporting a charge of discrimination." 10.4A.1, Title VII.

The standard for an adverse employment action is not limited to conduct that affects the terms or conditions of employment but is expanded to include any action that would have "dissuaded a reasonable worker from making or supporting a charge of discrimination." <u>Davis v. City of Newark</u>, 285 F. App'x 899, 904 (3d Cir. 2008) (citing <u>Burlington N. & Santa Fe Ry. Co. v. White</u>, 548 U.S. 53, 68 (2006)). Nonetheless, "petty slights, minor annoyances, and simple lack of good manners will not create such deterrence;" rather, retaliation is actionable only where it produces material injury or harm sufficient to deter opposition to or reporting of discriminatory employment practices. <u>Burlington</u> N., 548 U.S. at 68.

While Defendant tries to diminish the severity of the actions, the pattern of harassment described above (including Plaintiff's termination), are material actions that altered the terms and conditions of Plaintiff's employment. <u>Davis</u>; <u>Burlington</u>, *supra.*

By comparison, courts have found a one-day, unpaid suspension can constitute an adverse employment action. <u>McCall v. City of Philadelphia</u>, 2013 WL 5823873 (E.D.Pa. 2013).

In sum, Plaintiff's alleges Defendant Morgan was the actual cause of Plaintiff's termination, and further personally contributed to Plaintiff's hostile work environment.

Ultimately, each of these issues are legitimate disputes of fact for the jury/fact finder.

At this stage, these allegations raise significant doubts, which call into question Defendant Morgan's motivations and credibility. Plaintiff must receive the benefit of all reasonable inferences from her allegations.

Questions of credibility are jury questions. <u>Big Apple BMW, Inc. v. BMW of N. Am., Inc.</u>, 974 F.2d 1358, 1363 (3d Cir.1992). A jury must decide.

B. **Concessions**

Plaintiff respectfully withdraws her retaliation claim.

**WHEREFORE,** Plaintiff, by and through her undersigned counsel, respectfully requests this Honorable Court deny the Defendants' Partial Motions to Dismiss Plaintiff's First Amended Complaint.

**WEISBERG LAW**
/s/ Matthew B. Weisberg
Matthew B. Weisberg, Esq.
PA Attorney ID No. 85570
David A. Berlin, Esq.
PA Attorney ID No. 314400
7 South Morton Ave
Morton, PA 19070
610-690-0801
Fax: 610-690-0880
Attorney for Plaintiff

**MILDENBERG LAW FIRM**
/s/ Brian R. Mildenberg, Esq.
Brian R. Mildenberg, Esq.
PA Attorney ID No. 84861
1735 Market St.,
Suite 3750
Philadelphia, PA 19103
215-545-4870
Fax: 215-545-4871
brian@mildenberglaw.com
www.MildenbergLaw.com
Attorney for Plaintiff

## UNITED STATES DISTRICTCOURT
## EASTERN DISTRICT OF PENNSYLVANIA (Philadelphia)

| | | |
|---|---|---|
| DEBRA CONGO | : | |
| | : | |
| Plaintiff, | : | NO. 2:20-cv-02322-JD |
| | : | |
| v. | : | |
| | : | |
| AMERICAN AIRLINES GROUP INC., | : | **JURY TRIAL DEMANDED** |
| et al. | : | |
| Defendants. | : | |

### CERTIFICATE OF SERVICE

I, David A. Berlin, Esquire, hereby certify that on this 23rd day of September 2020, a true and correct copy of the foregoing Plaintiff's response in opposition to Defendants' partial motion to dismiss was served via ECF upon the following parties:

CHRISTINA MAE MICHAEL, ESQ.
FISHER & PHILLIPS LLP
TWO LOGAN SQUARE 12TH FL
100 N 18TH ST
PHILADELPHIA, PA 19103

**WEISBERG LAW**

/s/ David A. Berlin
David A. Berlin, Esquire
PA Attorney ID #: 314400
7 S. Morton Avenue
Morton, PA 19070
(610) 690-0801
(610) 690-0880 – Fax
dberlin@weisberglawoffices.com
*Attorney for Plaintiff*